IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DOUGLAS TRAVISANO, :
:
      Plaintiff, :
v. : Civil Action No. 1:12-CV- 00254 - RGA
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
      Defendant. :

MEMORANDUM OPINION

Karen Yvette Vicks, Esq., Dover, DE; Attorney for Plaintiff Douglas Travisano.

Charles M. Oberly, III, United States Attorney, Wilmington, Delaware; Patricia A. Stewart, Special Assistant United States Attorney, Philadelphia, Pennsylvania; Attorneys for Defendant Michael J. Astrue, Commissioner of Social Security.

April 25, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff Douglas A. Travisano appeals the denial of his application for disability insurance benefits. Jurisdiction exists pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).

Pending before the Court are cross-motions for summary judgment filed by Travisano and the Commissioner. (D.I. 14, 16). Travisano's motion for summary judgment asks the Court to remand the case to the Commissioner for further consideration. The Commissioner's cross-motion for summary judgment requests that the Court affirm the decision to deny benefits.

## BACKGROUND

### 1. Procedural

Douglas Travisano filed a Title II application for a period of disability and disability insurance on March 20, 2008. (Tr. 14). The claimant also filed a Title XVI application for supplemental security income. (*Id*). These original claims alleged an onset date of September 15, 2006. (Tr. 122-27). The claims were denied on November 22, 2008 and upon reconsideration on July 29, 2009. (Tr. 80-89). Pursuant to the claimant's written request, a hearing was held on July 22, 2010. (Tr. 34-71). The claimant appeared with his attorney and at that time amended the alleged onset date to November 20, 2008. (*Id*). The ALJ issued an unfavorable decision on August 19, 2012 and Travisano's request for review was denied. (Tr. 11-23, 1-6).

### 2. Relevant Medical History

In his disability application, Travisano alleged severe mental health issues and excessive fatigue. Travisano first sought psychiatric treatment in 1995 at the age of 26. (Tr. 43). During the next three years, Travisano was twice hospitalized to treat his mental health disorder. (Tr. 254,

276, 330). Once stabilized, Travisano entered a vocational rehabilitation program while continuing psychiatric treatment. (Tr. 43). Travisano successfully re-entered the workforce as a data entry clerk. (Tr. 21).

In September 2006, Travisano was diagnosed with Schizoaffective Disorder by the treating physician at Bridges to Care. (Tr. 282-83). Schizoaffective Disorder manifests a combination of symptoms including hallucinations, anxiety, depression and mania. *See Diagnostic and Statistical Manual of Mental Disorders*, 297-304 (4th ed., Amer. Psych. Assn. 1994). In 2007, Travisano's mother passed away and he subsequently moved to Delaware. (Tr. 44).

Travisano began treatment at Phoenix Mental Health in November 2008. (Tr. 452). The same month, Travisano was hospitalized for five days under the care of Dover Behavioral Health. (Tr. 336-46). On admission Travisano presented with auditory hallucinations, depression and anxiety. At discharge his prognosis was fair and he was to return to Phoenix Mental Health for follow up treatment. (*Id*).

From the amended alleged onset date of November of 2008 until as recently as 2011, Travisano was under the continual care of both Dr. Abashidze and therapist John Arrick for Schizoaffective Disorder. (Tr. 518). Travisano has consistently and continually been prescribed antipsychotic, mood stabilizing and antidepressant medications. (Tr. 46). Dr. Abashidze's handwritten treatment notes were submitted to the Social Security Administration (Tr. 346, 349-53, 362-67, 382, 384, 387, 389, 391, 394-98, 464, 468, 470, 472, 475)[1] along with a Mental

---

[1] The Initial Evaluation Form (12/3/08) appears in the record three times, at Tr. 349-53, 363-67, and 394-98. The office visit on May 20, 2009, appears twice. Tr. 382 and 477.

3

Impairment Questionnaire Form dated May 10, 2010. (Tr. 452-56). Dr. Abashidze states on the form that Travisanno's schizoaffective disorder causes sleep disturbances, mood disturbance, delusions, anhedonia, difficulty thinking, social withdrawal, oddities of thought, paranoia, manic syndrome and psychomotor agitation or retardation. (*Id*). Additionally, the form reiterates that the highest GAF from the past year was 50 which is indicative of serious impairment. This form further reflected Travisano's likelihood of missing work more than three times a month as well as his inability to concentrate for more than two hours, sustain a routine without supervision, work a whole day without interruption from symptoms, perform at a consistent pace, interact appropriately with superiors, carry out detailed instructions, set realistic goals, or deal with the stress of semiskilled labor. (Tr. 454-56).

Dr. King performed a psychiatric review of Travisano on December 20, 2008. On this form King indicated a diagnoses of schizoaffective disorder. (Tr. 368-81). This assessment was based upon the records submitted to the Social Security Administration as of the date of review. It was King's assessment that Travisano was only moderately limited in any of the RFC categories. The assessment asserts Travisano "should be able to sustain a basic work routine" although his delusional thinking should limit the amount of required interaction with others in such a job. (*Id*). Dr. Ferreira offered a case analysis on July 15, 2009 that in one sentence affirmed Dr. King's assessment. (Tr. 403).

Travisano is obese with a BMI over 30 and was diagnosed with sleep apnea in December of 2009. (Tr. 17, 20). Treatment for the sleep apnea includes nightly use of first a CPAP machine and then, at Travisano's request, a BiPAP machine. Travisano has reported an improvement in his sleep with the use of the machine. (Tr. 20).

At the hearing on July 22, 2010 before the ALJ, Travisano testified to his impairments and symptoms. (Tr. 34-66). Travisano's testimony affirmed auditory hallucinations in times of stress, night terrors, anxiety and paranoia although the prescribed medications had decreased the frequency of such symptoms. The sleep apnea was being treated successfully with a BiPap machine according to his testimony. In response to the ALJ's questioning, Travisano stated he had no social interaction other than with his fiancee. He did take nature pictures, play musical instruments, shop for necessary items, conduct basic housekeeping, groom himself and take his dog for walks. Travisano drove himself to the hearing and was able to answer the ALJ's inquiries. (*Id*). Ellen Jenkins, a vocational expert, stated that Travisano could no longer work as he did in his former capacity. (Tr. 66-70). Jenkins further stated that Travisano could hold a job with a light or medium exertional level and that such jobs currently existed in the local economy. *(Id)*. In response to the ALJ's inquiry whether Travisano would be able to do any of these jobs if the limitations Dr. Abashidze listed in his questionnaire form were accurate, Jenkins replied Travisano would not be able. (Tr. 70).

On August 19, 2010, the ALJ held that Travisano was not disabled. (Tr. 14-23).

**STANDARD OF REVIEW**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., evidence offered by treating physicians)-or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the Court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

**DISCUSSION**

**1. Disability Determination Process**

Title 11 of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment

of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In order to qualify for DIB, the claimant must establish that he or she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 404.131. A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3). A claimant is disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).

If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, a finding of non-disabled is required. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. If the claimant is not suffering from a severe impairment or a combination of impairments that is

severe, a finding of non-disabled is required. *See* 20 C.F.R. §404.1520(a)(4)(ii).

If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R.§ 404.1520(a)(4)(iii): *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R.§ 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e). At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R.§ 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [his] impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See id.* In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience,

8

and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

The ALJ applied the sequential analysis in rejecting Travisano's claim. (Tr. 14-23). The ALJ found that Travisano met the insured status requirement of the Social Security Act and had not been engaged in substantial gainful activity since the alleged onset date on November 2008. This satisfied the first step of the sequential analysis. At the second step, the ALJ determined that Travisano suffered from multiple severe impairments, including depression, obesity and sleep apnea. (Tr. 16). Because the ALJ found at least one severe impairment, step three of the sequential analysis was undertaken to determine whether any impairment or combination of impairments medically equaled one of the listed impairments that statutorily presume disability. The ALJ held that none of Travisano's impairments equaled a listed impairment. (Tr. 17).

The ALJ then continued to the fourth step, where she determined Travisano's residual functional capacity. (Tr. 18). The ALJ stated she had, "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence..." (Tr. 20). The ALJ held that the "intensity, persistence and limiting effects of the these symptoms" were overstated by the claimant. (*Id.*). Dr. Abashidze's medical assessment was not given controlling weight as the ALJ stated she could not ascertain if Abashidze treated the claimant due to the general illegibility of his handwritten treatment notes. (*Id.*). Abashidze's assessment was also held to be inconsistent with the evidence gleaned by the ALJ during Travisano's hearing regarding the tasks he is able to complete, ability in answering questions and hobbies he pursues. (*Id.*). Great weight was given to the reviewing psychologists' assessments as

9

she held these reports to be "consistent and well supported." (Tr. 21).[2] The ALJ determined that Travisano could engage in unskilled jobs which encompass little interaction with the general public, limited changes in this schedule and which would not require him to make decisions. (Tr. 20).

At the fifth step, the ALJ found that Travisano was no longer capable of his previous work as a data entry clerk. The ALJ adopted the vocational experts's opinion that Travisano was capable of working in a medium unskilled position of laborer and sedentary unskilled positions that existed in significant numbers in the local economy. (Tr. 22). For these reasons, the ALJ held that Travisano was not disabled within the meaning of the Social Security Act. (*Id*).

## 2. Appeal of ALJ's Decision

Travisano appeals the ALJ's decision making two arguments: (1) the ALJ failed to give appropriate deference to Dr. Abashidze's opinion; (2) the ALJ committed legal error by not accounting for all the functional limitations related to Travisano's impairments. (D.I. 15, ¶ 1).

Travisano argues that his treating psychiatrist's opinion was not given appropriate weight due to the ALJ's assertion that she was unable to read the doctor's handwritten treatment records. The ALJ does reference the handwritten treatment notes from John Arrick as evidence that Travisano appeared focused and alert during therapy sessions. (Exhibit 11F/2, 9)(See Tr. 20). The ALJ gave "little weight" to Dr. Abashidze's opinion as there was no objective medical support included in the record to support his opinion. (Tr. 21).

---

[2] The ALJ's entire treatment of the reviewing psychologists' opinions and the basis therefore consists of, "after consideration of all evidence of record, the [ALJ] accords great weight to the consistent and well-supported opinions of the reviewing psychologists at the initial and reconsideration levels." Exhibit 10F [Tr. 368-81] and 12F [Tr. 403]).

The Commissioner responds that the ALJ assigned appropriate weight to the treating and non-treating physicians' opinions. (D.I. 17, at 11-13). Dr. Abashidze's opinion as submitted on the Social Security Administration's form did not include supporting explanations or clinical findings. The treatment notes Abashidze did submit were generally illegible but the parts that could be read reflect no adjustments to Travisano's treatment plan of therapy and medication. The Defendant further contends that John Arrick's notes as Travisano's therapist are inconsistent with Dr. Abashidze's opinion as these handwritten records show Claimant to be active, alert, focused and able to discuss personal information. The opinions of Dr. King and Dr. Ferreira were accorded great weight because they were both found to be consistent with objective medical evidence. (Tr. 21).[3]

The Third Circuit's "treating physician doctrine" requires a court considering disability to accord greater weight to the opinions of a treating physician than to a non-treating physician. *See Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). Great weight should especially be accorded in cases were the treating physician's opinions "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Dass v. Barnhart,* 386 F.Supp.2d 568, 576 (D.Del. 2005). An ALJ may only reject a treating physician's well-supported opinions when there is substantial evidence of contradictory medical evidence. *See Morales v. Apfel,* 225 F.3d 310, 318 (3d. Cir. 2000).

Treating physician's opinions that are found to be inconsistent with substantial evidence in the record or are not well-supported are not given controlling weight. That does not entitle the

---

[3] Dr. King's opinion includes a paragraph summarizing the reasons for the opinion. (Tr. 381). Dr. Ferreira's opinion consists, essentially, of one word - "affirmed." (Tr. 403).

court to reject the opinion. S.S.R. 96-2p, 1996 WL 374188 (July 2, 1996).

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id*. When a determination is made to deny a claim and the treating physician's opinion was not accorded controlling weight, the ALJ's decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*.

"(W)here detailed regulations prescribe the process an ALJ must follow to determine how much weight to give particular evidence, the Court can and should remand for further proceedings if the ALJ failed to follow these procedures." *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 659 (D.Del. 2008).

The ALJ's decision does not accord Dr. Abashidze's opinion weight as a treating physician. (Tr. 20).[4] Citing her inability to read most of the handwritten notes provided by Dr. Abashidze, the ALJ stated that she was unable to ascertain whether the doctor ever treated Travisano. (*Id*). The medical records beginning with Travisano's psychiatric assessment from

---

[4] Besides the handwritten treatment notes, which the ALJ fairly characterized as "generally illegible," (Tr. 20), there is also a typed letter (Tr. 518) which identifies Dr. Abashidze as a treating physician.

12

the Dover hospital in November of 2008 all state that Dr. Abashidze was Travisano's treating psychiatrist. (Tr. 340). The Commissioner, in his briefing, was able to identify at least eight occasions where Dr. Abashidze treated Travisano. (D.I. 17, at 7-11).[5] The regulations requiring a step by step analysis of the weight to be given a treating physician's opinion could not have been sufficiently undertaken as the ALJ did not know that Dr. Abashidze had treated Travisano.

The Commissioner's contention (which was not present in the decision) is that Dr. Abashidze's opinions are unsupported due to the lack of additional information being provided on the submitted Mental Impairment Questionnaire form. (D.I. 17, at 16). The form states, "Attach all relevant treatment notes and test results, which have not been provided previously to the Social Security Administration." (Tr. 452). Dr. Abashidze's handwritten contemporaneous notes had previously been submitted to the Social Security Administration and therefore need not have been attached to the form. The ALJ's decision does not specify any substantial evidence to support her finding that Dr. Abashidze's opinion as to Travisano's limitations failed to include any objective medical evidence nor does it specify the objective medical evidence found to be inconsistent with Abashidze's opinion. As the decision was to deny benefits, such specification in the decision is required. S.S.R. 96-2p, 1996 WL 374188 (July 2, 1996).

Dr. Abashidze's medical opinions are not inconsistent with the record. Arrick's treatment notes stating that Travisano presented to therapy focused, alert and able to discuss life events does not preclude a finding that he is unable to return to gainful employment. The Third Circuit

---

[5] While it requires some effort, the record shows at least ten dates of treatment with Dr. Abashidze. Tr. at 391 (12/3/08), 389 (12/17/08), 387 (1/28/09), 384 (3/25/09), 382 (5/20/09), 475 (7/17/09), 472 (9/13/09), 470 (11/4/09), 468 (12/2/09), and 464 (3/3/10).

in *Morales* held that a treating psychiatrist's notations that a patient with an affective disorder is stable and well-controlled under medication does not support a medical conclusion that the patient can return to work. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). The fact that Abashidze did not alter or adjust Travisano's treatment also does not support a medical conclusion that he can return to work. A treating physician's opinion stating that a patient's "ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." *Id.*

The opinions of Dr. King and Dr. Ferreira are both based on the fact that while medicated in a controlled environment Travisano is alert and focused. Dr. King states Travisano's claims are only partially credible due to the progress notes taken following his hospitalization in which his therapist reported that Travisano was aware and able to answer questions. (Tr. 381). The notes provided to Dr. King, spanning the few weeks between Travisano's discharge and Dr. King's assessment, noted that Travisano was "stable" and did not require an adjustment to his medication. Dr. King states that there is no medical second opinion in the file but that Travisano "seems capable of simple tasks, and should be able to sustain a basic work routine." (*Id*). Dr. Ferreira's assessment is one sentence affirming Dr. King's opinion. (Tr. 403). Pursuant to *Morales*, the sole support for both of these non-treating physicians' opinions is not valid as the work environment's impact on a patient with an affective disorder was not taken into consideration. Neither Dr. King or Dr. Ferreira provided any additional support for a finding inconsistent with the treating psychiatrist Dr. Abashidze's opinion. The ALJ's decision finds that Dr. King and Dr. Ferreira rendered opinions consistent with the objective medical support in the

record. There is, however, no specification in either the decision or the non-treating doctor's assessments of the objective medical support that was relied upon. (Tr. 20, 381, 403).

Travisano's appearance at the hearing appears to have been given significant weight by the ALJ in reaching her decision. The ALJ found that Travisano was able to answer questions, drive, groom himself, complete housekeeping tasks, pursue hobbies and stated the reason he stopped working two years prior to the alleged onset date was to care for his mother. (Tr. 20-21). This testimony diminished Travisano's credibility as the ALJ appeared to find these facts to be inconsistent with Travisano's claims and Dr. Abashidze's opinion. (*Id*). "Although an ALJ may consider his own observations of the claimant and this Court cannot second-guess the ALJ's credibility judgments, they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record." *Morales v. Apfel,* 225 F.3d at 318. The ALJ's observations of Travisano at the hearing do not provide an independent basis for disregarding Dr. Abashidze's opinions.

One final point: the ALJ failed to address Travisano's mental impairment accurately. The decision finds that Travisano suffers from depression. (Tr. 16, 20-21). The ALJ makes this determination by finding that the diagnosis of schizoaffective disorder was re-diagnosed as depression as evidenced by a notation of a doctor who saw Travisano in 2006. (Tr. 19). The medical record referred to in the decision is dated October 23, 2006. (Tr. 290). The next record from the same physician lists the diagnosis as major depressive disorder with psychosis and notes that Travisano is suffering from "early psychosis." (Tr. 292). During the remainder of the course of his treatment with Bridge's Behavior Health, Travisano's records indicate an increase in paranoia and psychosis. (Tr. 304-07). Jersey Shore Medical and Pediatric's treatment records for

the following year list a diagnosis of depression disorder and unknown psychosis. (Tr. 308-19). The decision refers to Dr. Coram's records from April 15, 2008 to evidence Travisano's stability. (Tr. 19). Dr. Coram's report states that Travisano appeared credible, was suffering from delusional ideation, had positive symptoms of schizophrenia that required medication, and was limited in every way listed upon the form. (Tr. 330-35). Doctors Abashidze, King and Ferreira all agree that Travisano suffers from schizoaffective disorder. (Tr. 452, 381, 403). This affective disorder presents a greater amount and range of symptoms than mere depression, such as delusions, mood swings and paranoia.[6] The only mental impairments listed in the decision are "some difficulties in social functioning and concentration, persistence, or pace" relating to depression. (Tr. 20). The RFC analysis was thus compromised as it failed to take into consideration the other implications of schizoaffective disorder that are not related to depression.

Travisano's argument about sleep apnea and obesity is without basis. The record shows that these conditions exist. There is, however, no documentation that they result in any limitations for Travisano. The ALJ's decision gives weight to her own observations from the hearing. Travisano had driven himself to the hearing and testified that although he still occasionally nods off, the sleep apnea was improving. Travisano himself offered no credible testimony as to limitations from the obesity but instead offered that he is capable of caring for himself and his housekeeping needs. (Tr. 40-65). As there exists no inconsistent objective medical evidence, the ALJ's finding that there were no limitations is supported by substantial

---

[6] "Schizoaffective Disorder is a disorder in which a mood episode and active-phase symptoms of Schizophrenia occur together and were preceded or are followed by at least 2 weeks of delusions or hallucinations without prominent mood symptoms." *Diagnostic and Statistical Manual of Mental Disorders*, 298 (4th ed., Amer. Psych. Assn. 1994).

16

evidence.

As explained above, the Court finds that the ALJ did not adequately justify her decision to give near controlling weight to the non-treating physicians while giving almost no weight to the treating psychiatrist. The ALJ also failed to properly identify the mental impairment as schizoaffective disorder and therefore failed to adequately consider this impairment's impact in the RFC evaluation. This matter will therefore be remanded for reconsideration consistent with this opinion.